IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| REGINALD WHIDDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-183-SMD |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Commissioner of Social Security*,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Reginald Whiddon (Whiddon) appeals the denial of his applications for Social Security benefits. Whiddon argues that new medical evidence he submitted to the Social Security Appeals Council has a reasonable probability of establishing that he is disabled and, thus, he requests remand. *Pl.'s Br.* (Doc. 12) at 6-7. Whiddon's new medical evidence is both chronologically relevant and material, and the Court therefore REVERSES the Commissioner's decision and REMANDS this case for consideration of the new evidence.

**I.     JURISDICTION & PROCEDURAL HISTORY**

Whiddon filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on April 10, 2017, alleging a disability onset date of April 1, 2017.

---

[1] Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant in his official capacity in this action. *See* FED. R. CIV. P. 25(d)(1).

(Tr. at 18).² Following a hearing, the administrative law judge (ALJ) found that Whiddon was not disabled. *Id.* at 18-27. Whiddon filed a request for review and submitted additional evidence to the Appeals Council. *Id.* at 1-2. The Appeals Council denied review on January 10, 2020, *id.* at 8-11, and the ALJ's decision became the final decision of the Commissioner of Social Security (the Commissioner). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). This Court has jurisdiction to review the Commissioner's final decision pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).³

## II. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). An ALJ must evaluate an application for a period of disability or disability insurance benefits (or both) pursuant to a five-step process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer

---

² "Tr." consists of a consecutively paginated record of the administrative proceedings below and spans from ECF Doc. 14-1 to ECF Doc. 14-8. For clarity and consistency with the parties' briefs, the Court cites to the consecutive pagination instead of the ECF pagination.
³ Pursuant to 28 U.S.C. § 636(c), both parties have consented to the undersigned Magistrate Judge conducting all proceedings and entering final judgment in this case. *Pl.'s Consent to Jurisdiction* (Doc. 16); *Def.'s Consent to Jurisdiction* (Doc. 15).

to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). The RFC is what the claimant is still able to do, despite the claimant's impairments, based on all relevant medical and other evidence. *Id*. The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on: (1) the Medical Vocational Guidelines,[5] or (2) the testimony of a vocational expert (VE).[6] *Id.*

---

[4] *McDaniel* is a supplemental security income ("SSI") case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

[5] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience to determine whether there is work in the economy that the claimant can perform. 20 C.F.R. Pt. 404, Subt. P, App. 1 Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[6] A VE is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

3

at 1239-40.

## III. ADMINISTRATIVE PROCEEDINGS

Whiddon was 48 years old on his alleged disability onset date. (Tr. at 25). He had a high school education, additional trade school training, and past relevant work experience as an auto mechanic. *Id.* at 179. He alleged disability due to a spinal injury he suffered in a rollover automobile accident on April 1, 2017. *Id.* at 23, 178, 187.

At step one, the ALJ found that Whiddon had not engaged in substantial gainful activity since his alleged onset date. *Id.* at 20. At step two, the ALJ found that he had the following severe impairments: thoracic fracture (status post-surgery), cervical degenerative disc disease, right shoulder degenerative joint disease, and obesity. *Id.* At step three, the ALJ determined that Whiddon's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subt. P, App. 1. *Id.* at 22. The ALJ then determined that Whiddon had the RFC to perform light work with additional limitations. *Id.*

At step four, the ALJ found that Whiddon was unable to perform his past relevant work as an auto mechanic because the demands of this work exceeded his RFC. *Id.* at 25. However, at step five, the ALJ determined that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" *Id.* Therefore, the ALJ concluded that Whiddon had not been disabled within the meaning of the Social Security Act from his alleged onset date of April 1, 2017, through the date of her decision on January 14, 2019. *Id.* at 26-27.

4

Whiddon requested review of the ALJ's decision by the Appeals Council. *Id.* at 8. He submitted new medical evidence consisting of a two-page record signed by Dr. Timothy Holt of the Montgomery Spine Center on April 4, 2019. *Id.* at 1-2, 9. Dr. Holt opined that Whiddon had severe limitations on standing, sitting, overhead work, and using his arms away from his body. *Id.* at 2. Dr. Holt opined: "I doubt he would be able to return to gainful employment." *Id.* The Appeals Council determined that, because the new medical evidence postdated the ALJ's decision, the evidence was not chronologically relevant to the period of alleged disability at issue. *Id.* at 9. It advised Whiddon that "if you want us to consider whether you were disabled after January 14, 2019, you need to apply again," and denied his request for review. *Id.*

## IV. ANALYSIS

Whiddon argues that his case should be remanded because there is a reasonable probability that the additional medical evidence he submitted to the Appeals Council would change the outcome of the decision. *Pl.'s Br.* (Doc. 12) at 6-7. Generally, a claimant may present evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). The Appeals Council must consider evidence submitted after the ALJ's decision if it is new, material, and chronologically relevant. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018); *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). New evidence is material if there is a reasonable probability that it would change the agency's decision and chronologically relevant if it relates to the period between the claimant's alleged onset date and the ALJ's decision. *Hargress*, 883 F.3d at 1309. The Appeals

5

Council's refusal to consider new evidence and denial of review is subject to *de novo* review in the district court. *Washington*, 806 F.3d at 1321.

### A. Chronological Relevance

Here, the Appeals Council refused to consider Whiddon's new evidence concluding that it was not chronologically relevant. (Tr. at 9). Whiddon makes no argument addressing the chronological relevance issue. *Pl.'s Br.* (Doc. 12) at 6-7; *Def.'s Br.* (Doc. 13) at 4. Rather, he simply argues that his new evidence is material. *Pl.'s Br.* (Doc. 12) at 6-7. Under some circumstances, medical opinions given after the ALJ's decision may still be chronologically relevant. *Griffin v. Soc. Sec. Admin., Comm'r*, 842 Fed. App'x 339, 341 (11th Cir. 2021). For example, in *Washington v. Soc. Sec. Admin., Comm'r*, the Eleventh Circuit held that a psychologist's opinion based on an evaluation conducted approximately seven months after the ALJ's decision was chronologically relevant because: (1) the claimant described mental symptoms that occurred throughout his life, (2) the psychologist reviewed claimant's mental health records from the relevant period, and (3) there was no evidence that the claimant's cognitive abilities declined after the ALJ's decision. 806 F.3d at 1322-23. Notably, the Eleventh Circuit limited its holding in *Washington* to the specific circumstances of that case. *Id.* at 1323.

The period of disability at issue began on April 1, 2017, when Whiddon broke his back in a rollover car accident, and ended on January 14, 2019, when the ALJ issued her decision. (Tr. at 27, 240). Whiddon was admitted to Baptist Medical Center South (Baptist South) through the emergency room (ER) following the accident and diagnosed with, *inter alia*, a broken back at the T10 and T11 vertebrae in his thoracic spine. *Id.* at 245. Dr. Holt

6

performed a posterior fusion with rods and screws at the T8-9, 9-10, 10-11, 11-12, and 12-1 vertebrae on April 3, 2017. *Id.* at 491-93. He was discharged from Baptist South three days later on April 6, 2017. *Id.* at 301.

In the year after the spinal fusion surgery, Dr. Holt saw Whiddon four times for follow-up. On May 25, 2017, approximately two months after the surgery, Dr. Holt noted that x-rays showed that the rod and screw device was in a good position, that a good bone graft had formed, and that the fusion appeared solid. *Id.* at 526. He also noted that two views of the shoulder showed degenerative changes at the acromioclavicular joint "with a little bit of subluxation of the AC joint." *Id.* On physical exam, Dr. Holt noted that motor testing is 5/5, sensory is intact, and the wound looks good. *Id.* He noted that Whiddon was complaining of pain in the right shoulder and determined that he probably does have a grade one or two sprain or strain of the acromioclavicular joint. *Id.*

Two months later, on July 27, 2017, Dr. Holt saw Whiddon again. *Id.* 523-24. X-rays from this visit showed that the rod and screw device was in a good position, that good bone graft was forming, and that Whiddon's cervical spine showed some degenerative changes especially at C5-6 and C6-7. *Id.* at 523. Dr. Holt's overall impression was that "[h]is spine fracture looks great." *Id.* He noted that Whiddon had a little bit of back pain, but "overall he says he is doing really well." (Tr. 523). Dr. Holt stated that "[h]e can increase his activity." *Id.* He noted that Whiddon still complains of pain in his right shoulder, but "I explained to him that is not really something we deal with." *Id.*

Dr. Holt next saw Whiddon on January 4, 2018. *Id.* at 521. At this point, Whiddon was "about nine months out from the broken back and fusion. He is doing well. He states

7

his back feels really good." *Id.* X-rays showed that the old fusion looked good, that the rod and screw device were still well positioned, and that the screws had not failed. *Id.* Dr. Holt noted that he is neurologically intact, his range of motion is good, and the wounds look fine. *Id.* Dr. Holt ordered Whiddon "back in three months," or roughly "one year out from his surgery." *Id.*

Approximately one year after the back surgery, on April 6, 2018, Dr. Holt saw Whiddon again. *Id.* at 518-19. During this visit, Whiddon reported that "he is doing very well with his back other than some tightness if he walks too much." *Id.* 518. X-rays showed the rod and screw device were well positioned and that the bone graft appeared to be incorporated. *Id.* at 519. Physical examinations showed that Whiddon's "motor testing is 5/5" and his "wound looks great." Overall, Dr. Holt noted, "He is doing well." However, Whiddon had "difficulty walking, unexplained back pain, and inability to exercise." *Id.* at 518. Dr. Holt ordered, "For right now, we will follow him along. I will see him back here in one year just to see how things are coming along." *Id.* at 519.

Whiddon's new evidence concerns the office visit with Dr. Holt on April 4, 2019, approximately one year after his prior visit and three months after the ALJ's decision. *Id.* at 1-2. This was the follow-up interval Dr. Holt ordered on April 6, 2018. *Id.* at 519. In the "chief complaint" section, Dr. Holt noted that "Patient [is] here for routine follow-up and to discuss work status. He is having increasing thoracic and right shoulder pain. It is impossible for him to lift heavy objects." *Id.* at 1. In the "musculoskeletal" section, he noted that "Patient is positive for Difficulty Walking, Unexplained Back Pain, [and] Inability to Exercise." *Id.*

8

These are exactly the same symptoms Whiddon showed in April 2018. *Id.* at 518. Dr. Holt noted that Whiddon "comes in today for follow-up. He is doing reasonably well. He still has back pain which we would expect secondary to the nature of the original injury." *Id.* at 1. Physical examination showed that "[n]eurologically he is intact. Range of motion is limited. The wound looks fine. Everything seems to be doing reasonably well." *Id.* at 2. Dr. Holt makes no finding that Whiddon's condition had changed or significantly degraded in any way. X-rays continued to "show the fracture with the rod and screw device is in good position. The fracture appears to be healed. The fusion is solid." *Id.* However, "[h]e has a chronic AC separation with elevation of the clavicle and partial dislocation with arthritis of the acromioclavicular joint." *Id.*

All of these notations show that Dr. Holt was considering Whiddon's recovery from the broken back and other trauma he suffered in the rollover car accident on April 1, 2017, not a new condition or change in condition that arose after January 14, 2019, the date of the ALJ's decision. Most tellingly, in the "impression/plan" section of his note, Dr. Holt stated that, "[a]s to his work status, maybe there was some confusion." *Id.* This shows that Dr. Holt was looking backward in time to clarify confusion from his prior records, not forming a new impression or diagnosis based on changes in Whiddon's condition. Accordingly, although Dr. Holt's April 4, 2019 record postdates the ALJ's decision, it still concerns the traumatic injury he suffered during the period of disability at issue and is therefore chronologically relevant. *See Washington*, 806 F.3d at 1322-23.

B. **Materiality**

New evidence is material if there is a reasonable probability that it would change the agency's decision. *Hargress*, 883 F.3d at 1309. Whiddon argues that Dr. Holt's new record could reasonably have resulted in greater exertional limitations in Whiddon's RFC, which could reasonably have changed the outcome of the decision. *Pl.'s Br.* (Doc. 12) at 6-7. The Commissioner makes no argument concerning materiality. *Def.'s Br.* (Doc. 13) at 1-8.

In her decision, the ALJ found that Whiddon had the RFC to perform light work with additional limitations of standing and/or walking for up to 4 hours per 8-hour workday and occasionally reaching overhead bilaterally. (Tr. at 22). In Whiddon's new evidence, Dr. Holt opines that Whiddon "cannot do any work where he has to stand for any period of time greater than an hour or maybe even an hour and a half" and that "[h]e will not be able to do any sort of work where he has to work overhead or away from his body using his arms." These findings directly contradict the limitations in the ALJ's RFC calculation.

In addition, Dr. Holt finds that "[h]e cannot sit for long periods of time either secondary to the fact that we know sitting is the worst position for his lower back." *Id.* at 2. Dr. Holt states that "[n]eurologically I think he is doing all right, but from a mechanical standpoint, he will be markedly limited as to his abilities in the future" and "would have to be able to go from sitting to standing to possibly even lying down on occasion to allow him the ability to allow his back to recover." *Id.* He also found that Whiddon "does have marked degeneration of his right shoulder with acromioclavicular separation and arthritis." *Id.*

The ALJ relied on Dr. Holt's records in determining Whiddon's RFC, and it is likely that she would change her RFC determination upon consideration of the new evidence. *Id.* at 23-24; *see also Phillips*, 357 F.3d at 1240 (explaining that the opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary). There is a reasonable probability that a reduced RFC would change the Commissioner's determination that Whiddon is capable of making a making a successful adjustment to other work that exists in significant numbers in the national economy and the finding that he is not disabled. Accordingly, the new evidence is material.

## V. CONCLUSION

For these reasons, the Court finds that Whiddon's new evidence is chronologically relevant and material. The Court therefore REVERSES the Commissioner's decision and REMANDS this case for consideration of that evidence in conjunction with the record as a whole. The Court will enter final judgment by separate order.

DONE this 16th day of July, 2021.

/s/ Stephen M. Doyle
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE